UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

REPORT AND RECOMMENDATION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Raymond L. Semler,

     Plaintiff,

vs.

Donna Finch,

     Defendant.   Civ. No. 07-4252 (JNE/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## I.  Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the Motion of the Defendant Donna Finch to Dismiss the Complaint, or for Summary Judgment.  For these purposes, the Plaintiff Raymond L. Semler appears pro se; and the Defendant appears by Marsha Eldot Devine, Assistant Attorney General for the State of Minnesota.

For reasons which follow, we recommend that the Defendant's Motion to Dismiss be granted.

## II. <u>Factual and Procedural History</u>

At all times relevant to his claims, the Plaintiff was a civilly committed patient at the Minnesota Security Hospital, in St. Peter, Minnesota ("MSH"). The Plaintiff commenced this action under Title 42 U.S.C. §1983, as he contends that the Defendant delayed his necessary medical treatment, in violation of the Fourth, Eighth, and Fourteenth Amendments of the United States Constitution, and he also asserts several State causes of action, which are based upon the same facts. See, <u>Complaint</u>, <u>Docket No. 1</u>. The Defendant is sued in her official capacity as an employee of the State of Minnesota, given that she worked as a licensed practical nurse ("LPN") at MSH, during the relevant time period. <u>Id.</u>

As to the facts which underlie the Plaintiff's claims, the Plaintiff alleges that, on September 10, 2005, he asked to see the nurse "because his right leg was swelling and was considerably bigger in size, compared to the left leg." <u>Id.</u> at p. 3.[1] After being taken to see the Defendant, the Plaintiff asked to be taken to a hospital, in order to obtain treatment for his leg. <u>Id.</u> According to the Plaintiff, the Defendant stated,

---

[1] The Plaintiff's Complaint contains duplicates of Pages 3 and 6, and does not contain a Page 5. See, <u>Complaint</u>, supra.

"You will not be taken to the hospital, because you have not come up to the nurses [sic] station at all for any Tylenol or Ibuprofen." Id.

According to the Plaintiff, he was not taken to the hospital until September 16, 2005, at which time, he was diagnosed with Methicillin-resistant Staphylococcus aureus ("MRSA") which, he contends, is "a highly contagious and fatal staph infection, if not properly and immediately taken care of." Id.[2] The Plaintiff asserts

---

[2]According to the Centers for Disease Control and Prevention:

> MRSA stands for methicillin-resistant *Staphylococcus aureus*. This type of bacteria causes "staph" infections that are resistant to treatment with usual antibiotics.
>
> MRSA occurs most frequently among patients who undergo invasive medical procedures or who have weakened immune systems and are being treated in hospitals and healthcare facilities such as nursing homes and dialysis centers. MRSA in healthcare settings commonly causes serious and potentially life-threatening infections, such as bloodstream infections, surgical site infections, or pneumonia.
>
> In addition to healthcare-associated infections, MRSA can also infect people in the community at large. Such infections are generally mild and affect the skin with pimples or boils that can be swollen, painful and drain pus. These skin infections often occur in otherwise healthy people.

See, Centers for Disease Control and Prevention, MRSA: Methicillin-resistant

(continued...)

that, following his diagnosis, he "was put in a wheelchair, subjected to having his own bathroom assigned to him, his own shower assigned to him, having all his clothes sent out of the unit to be washed, [and] having no one else in the visiting room when he received a visit[.]" Id. at p. 4. He further contends that "'MSOP' [i.e., the Minnesota Sex Offender Program] staff would not even come out of the staff station, as they were afraid of catching something and carrying it home to their families." Id. As related by the Plaintiff, he "was subjected to cruel and unusual punishment, due to the actions of defendant, which very easily could have killed him." Id.

By way of additional background, the Plaintiff advises that he has previously sued the Defendant in State Court, based upon these same allegations. Id. at p. 7. In his State Court action, the Plaintiff alleged that the Defendant "violated the state and federal patients' bills of rights, criminally abused a vulnerable adult, knowingly transferred a communicable disease, and committed medical malpractice." Semler v. Finch, 2007 WL 1976751 at *1 (Minn.App., July 10, 2007), rev. denied (Minn., September 18, 2007). The Plaintiff commenced his State Court action on October 31, 2005, in Nicollet County District Court. See, Complaint, supra at p. 7. On May 31,

---

[2](...continued)
*Staphylococcus aureus* in Healthcare Settings, available at: http://www.cdc.gov/Features/MRSA/ (last accessed August 4, 2008).

2006, the State Trial Court granted the Defendant's Motion to Dismiss, and on July 10, 2007, the Minnesota Court of Appeals affirmed, observing that, "[w]ith the exception of medical malpractice, none of the grounds on which Semler sought relief supports a private cause of action," and "[w]ith respect to his medical-malpractice claim, Semler did not provide an affidavit complying with the expert-review statute." Semler v. Finch, supra at *1, citing Minnesota Statutes Section 145.682. On September 18, 2007, the Minnesota Supreme Court denied the Plaintiff's Petition for Review.

Thereafter, on October 15, 2007, the Plaintiff commenced this action, in Federal Court. See, Complaint, supra. Based upon these allegations against the Defendant, the Plaintiff asserts claims for a violation of his constitutional rights, under the Fourth, Eighth, and Fourteenth Amendments. Id. at p. 4. He also asserts claims for 1) Medical Malpractice and Medical Negligence; 2) a violation of the Federal Patient's Bill of Rights for Mental Health Patients, Title 42 U.S.C. §§9501, 10841; 3) a violation of the Minnesota Patient's Bill of Rights, Minnesota Statutes Section 144.651; 4) Criminal Abuse of a Vulnerable Adult, Minnesota Statutes Section 609.2325, Subdivision 3(a)(3); and 5) Knowing Transfer of Communicable Disease, Minnesota Statutes Section 609.2241. Id. at pp. 1, 3-4, 6-7. As relief, the Plaintiff

contends that he is "entitled to past, present and future Medical expenses," as well as "Monetary, Compensatory and Punitive damages." Id. at p. 10.

The Defendant now moves to dismiss the Complaint, based upon her contention that the Eleventh Amendment bars all of the Plaintiff's claims. See, Defendant's Motion to Dismiss, Docket No. 7.

### III.  Discussion

A.    Standard of Review.  "When reviewing a Rule 12(b)(6) dismissal for failure to state a claim, we look only to the facts alleged in the complaint and construe those facts in the light most favorable to the [nonmoving party]." Riley v. St. Louis County, 153 F.3d 627, 629 (8th Cir. 1998), cert. denied, 525 U.S. 1178 (1999), citing Double D Spotting Serv., Inc. v. Supervalu, Inc., 136 F.3d 554, 556 (8th Cir. 1998); see also, Maki v. Allete, Inc., 383 F.3d 740, 742 (8th Cir. 2004).  In addition, all reasonable inferences, from the facts alleged in the Complaint, must be drawn in favor of the nonmoving party.  See, Maki v. Allete, Inc., supra at 742.  "A complaint shall not be dismissed for its failure to state a claim upon which relief can be granted unless it appears beyond a reasonable doubt that plaintiff can prove no set of facts in support of a claim entitling him to relief." Young v. City of St. Charles, 244 F.3d 623, 627 (8th Cir. 2001), citing Breedlove v. Earthgrains Baking, 140 F.3d 797, 799 (8th Cir. 1998),

cert. denied, 525 U.S. 921 (1998); see also, <u>Maki v. Allete</u>, supra at 742; <u>Helleloid v. Independent School Dist. No. 361</u>, 149 F. Supp.2d 863, 866-67 (D. Minn. 2001).

"Nevertheless, dismissal under Rule 12(b)(6) serves to eliminate actions which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." <u>Young v. City of St. Charles</u>, supra at 627, citing <u>Neitzke v. Williams</u>, 490 U.S. 319, 326-27 (1989). "To avoid dismissal, a complaint must allege facts sufficient to state a claim as a matter of law and not merely legal conclusions." <u>Id.</u>, citing <u>Springdale Educ. Ass'n v. Springdale Sch. Dist.</u>, 133 F.3d 649, 651 (8th Cir. 1998).

A Motion to Dismiss can be converted to a Rule 56 Motion for Summary Judgment if "matters outside the pleadings are presented to and not excluded by the court." <u>Rule 12(b), Federal Rules of Civil Procedure</u>. However, a Court may consider some information, which is not contained within the Complaint -- such as materials that are part of the public record, and materials that are necessarily embraced by the pleadings -- without transforming the Motion into one for Summary Judgment. See, <u>Porous Media Corp. v. Pall Corp.</u>, 186 F.3d 1077, 1079 (8th Cir. 1999); see, <u>Enervations, Inc. v. Minnesota Mining and Manufacturing Co.</u>, 380 F.3d 1066, 1069 (8th Cir. 2004); <u>Stahl v. United States Dep't of Agriculture</u>, 327 F.3d 697, 700 (8th Cir.

2003). Here, because our decision rests entirely upon the pleadings, and upon the State Court decisions which are necessarily embraced by the Plaintiff's Complaint, we analyze the Defendant's Motion under the framework of Rule 12(b)(6), rather than under the regimen of Rule 56.

      B.    <u>Legal Analysis</u>.

      1.    <u>Eleventh Amendment Immunity</u>. As noted, the Defendant argues that the Plaintiff's claims against her are barred by the Eleventh Amendment, because the Plaintiff seeks only monetary relief. See, <u>Defendant's Memorandum in Support</u>, <u>Docket No. 9</u>, at 4-6.

In an action under Title 42 U.S.C. §1983, a public servant may be sued in an official, or in an individual capacity, or both. See, <u>Johnson v. Outboard Marine Corp.</u>, 172 F.3d 531, 535 (8th Cir. 1999). A suit against a public employee in that person's official capacity is merely a suit against the public employer. <u>Id.</u>, citing <u>Kentucky v. Graham</u>, 473 U.S. 159, 165 (1985). The Eleventh Amendment protects the State, and the arms of the State, from liability for monetary damages in a Section 1983 action. See, <u>Hadley v. North Arkansas Community Technical College</u>, 76 F.3d 1437, 1438 (8th Cir. 1996), cert. denied, 519 U.S. 1148 (1997)(stating that a State Agency or its officials may invoke Eleventh Amendment immunity, if the practical result of a suit

would result in Judgment against the State itself).  Such immunity also extends to State officials who are named as individual defendants acting in their official capacity. Id.  When the action is against the office and not the person, there is no difference from a suit against the State itself.  See, Hafer v. Melo, 502 U.S. 21, 25-26 (1991); Will v. Michigan Department of State Police, 491 U.S. 58, 71 (1989).

The very same is true with respect to claims that are heard pursuant to the Court's supplemental jurisdiction.  See, Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 121 (1984)("[N]either pendent jurisdiction nor any other basis of jurisdiction may override the Eleventh Amendment."); DeGidio v. Perpich, 612 F.Supp. 1383, 1388-89 (D. Minn. 1985)(concluding that Minnesota did not **generally** waive its Eleventh Amendment immunity against State tort claims, which are brought in Federal Court, simply by enacting the Minnesota Tort Claims Act, Minnesota Statutes Section 3.736).

The Plaintiff has not identified whether his claims against the Defendant are individual capacity claims, or official capacity claims.  As such, we are bound to construe the Plaintiff's claims as official capacity claims.  See, Johnson v. Outboard Marine Co., supra at 535 ("[I]n order to sue a public official in his or her individual capacity, a plaintiff must expressly and unambiguously state so in the pleadings,

- 9 -

otherwise, it will be assumed that the defendant is sued only in his or her official capacity."), citing <u>Artis v. Francis Howell North Band Booster Association, Inc.</u>, 161 F.3d 1178, 1182 (8th Cir. 1998); <u>Egerdahl v. Hibbing Community College</u>, 72 F.3d 615, 619 (8th Cir. 1995).

MSH, and the Minnesota Sex Offender Program ("MSOP") that it houses, are facilities of the State Department of Human Services, which, in turn, is a subdivision of the State of Minnesota.  In addition, at the time of the events which are alleged in the Complaint, the Defendant was an employee of MSOP.  Therefore, the Defendant is entitled to Eleventh Amendment immunity.  See, <u>Hadley v. North Arkansas Community Technical College</u>, supra at 1438.  The Plaintiff does not allege any waiver of Eleventh Amendment immunity by the Defendant, and a review of the Record does not disclose any such waiver by the State.  See, <u>Faibisch v. University of Minnesota</u>, 304 F.3d 797, 800 (8th Cir. 2002)("To waive sovereign immunity, a state must make a clear, unequivocal statement that it wishes to do so.").  Therefore, we find that the Plaintiff's claims are barred by the Eleventh Amendment, given that he seeks only monetary relief.

Nonetheless, in the interest of completeness, we turn to consider the Defendant's alternative argument; namely, that the Plaintiff's claims are barred by <u>res judicata</u>. See, <u>Defendant's Memorandum in Support</u>, supra at p. 6 n. 6.

      2.    <u>Res Judicata</u>.

      a.    <u>Standard of Review</u>. "'Res judicata' is the term traditionally used to describe two discrete effects:  1) what we now call claim preclusion, which is a valid final adjudication of a claim precludes a second action on that claim or any part of it; and 2) issue preclusion, long called 'collateral estoppel," which traditionally occurs where an issue of fact or law, actually litigated and resolved by a valid final judgment, binds the parties in a subsequent action, whether on the same or a different claim." <u>Leonard v. Southwestern Bell Corp. Disability Income Plan</u>, 341 F.3d 696, 701 (8th Cir. 2003), citing <u>Thomas v. General Motors Corp.</u>, 522 U.S. 222, 233 n. 5 (1998).

"'Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" <u>Gurley v. Hunt</u>, 287 F.3d 728, 731 (8th Cir. 2002), quoting <u>Allen v. McCurry</u>, 449 U.S. 90, 94 (1980). "The test applied to determine whether res judicata bars litigation of a claim is:  (1) whether the prior judgment was rendered by a court

of competent jurisdiction; (2) whether the judgment was a final judgment on the merits, and (3) whether the same cause of action and same parties or their privies were involved in both cases." Id., citing De Llano v. Berglund, 183 F.3d 780, 781 (8th Cir. 1999); see also, Leonard v. Southwestern Bell Corp. Disability Income Plan, supra at 701; Canady v. Allstate Ins. Co., 282 F.3d 1005, 1014 (8th Cir. 2002); Black Clawson Co., Inc. v. Kroenert Corp., 245 F.3d 759, 762 (8th Cir. 2001); Lundquist v. Rice Memorial Hosp., 238 F.3d 975, 977 (8th Cir. 2001).  "Final judgment on the merits precludes the relitigation of a claim on any grounds raised before or on any grounds which could have been raised in the prior action," and a plaintiff cannot assert a claim on a theory of recovery when the same claim has already been rejected by a Court based upon another theory.  Poe v. John Deere Co., 695 F.2d 1103, 1105 (8th Cir. 1982)(citing cases).

In determining the scope of preclusion, that a prior Minnesota Judgment will effect, we necessarily look to the governing law of Minnesota.  See, Marrese v. American Academy of Orthopaedic Surgeons, 470 U.S. 373, 375 (1985)(a Federal Court must first consider the law of the State in which a Judgment was rendered when determining the preclusive effect to be accorded that Judgment), reh'g denied, 471 U.S. 1062 (1985).  Under Minnesota law, "[a] judgment on the merits constitutes an

absolute bar to a second suit for the same cause of action, and is conclusive between parties and privies, not only as to every other matter which was actually litigated, but also as to every matter which might have been litigated therein." Dorso Trailer v. American Body & Trailer, 482 N.W.2d 771, 774 (Minn. 1992), quoting Mattsen v. Packman, 358 N.W.2d 48, 49 (Minn. 1984); see also, Sondel v. Northwest Airlines, Inc., 56 F.3d 934, 938 (8th Cir. 1995).

In effect, res judicata "is essentially a finality doctrine which dictates that there be an end to litigation." Dorso Trailer v. American Body & Trailer, supra at 773-74, citing Federated Mutual Ins. Co. v. Litchfield Prec. Comp., Inc., 456 N.W.2d 434, 438 (Minn. 1990). Accordingly, it is "well established in Minnesota that a party 'should not be twice vexed for the same cause, and that it is for the public good that there be an end to litigation.'" Hauser v. Mealey, 263 N.W.2d 803, 807 (Minn. 1978), quoting Shimp v. Sederstrom, 233 N.W.2d 292, 294 (Minn. 1975).

b.    Legal Analysis.  As is the case, here, in his State Court proceeding, the Plaintiff alleged, in pertinent part, that the Defendant's denial of his request to visit a hospital "violated the state and federal patients' bills of rights, criminally abused a vulnerable adult, knowingly transferred a communicable disease, and committed medical malpractice." Semler v. Finch, supra at *1.  He further alleged

that "Finch's denial of his hospital request caused him 'pain that is indescribable.'"
Id.

Plainly, a comparison of the Plaintiff's allegations in the State Court proceeding, with those that are alleged here, reveals that the Plaintiff is attempting to relitigate his State Court action in this Federal forum, with the single addition of a Federal constitutional claim, pursuant to Section 1983. See, Complaint, at pp. 3, 7-9. Notwithstanding that new legal theory, the factual predicate for the Plaintiff's claim against the Defendant, in both the State Court action, and here, is the Defendant's asserted failure to bring him to a hospital for six (6) days. As a consequence, the Plaintiff's Section 1983 claim is legally barred, by res judicata. See, Sabbia v. Marshall Fields, 2007 WL 671314 at *3 (D. Minn., March 1, 2007)("A person who has a choice of more than one remedy for a given wrong may not assert them serially, but must advance claims all at once when such claims arise out the same circumstances and share the same nucleus of common facts."), citing Mills v. Des Arc Convalescent Home, 872 F .2d 823, 826 (8th Cir. 1989).

Moreover, we find that the remaining elements of res judicata have been met, as there is no assertion, here, that the State District Court was not a Court of competent jurisdiction, and there is no question that the parties are the same in both

actions.  Furthermore, as noted, the allegations in the State Court action need not be identical to those alleged in the Federal action, so long as the factual claims are the same, which they are.

Lastly, although the Plaintiff's State Court action never moved past the pleadings stage, "it is well-established that a Rule 12(b)(6) dismissal is a 'judgment on the merits' for res judicata purposes unless the plaintiff is granted leave to amend or the dismissal is reversed on appeal." United States v. Maull, 855 F.2d 514, 516 n. 3 (8th Cir. 1988), citing, as examples, Federated Dep't Stores v. Moitie, 452 U.S. 394, 399 n. 3 (1981), Carter v. Money Tree Co., 532 F.2d 113, 115 (8th Cir. 1976), cert. denied, 426 U.S. 925 (1976), and Glick v. Ballentine Produce, 397 F.2d 590, 593 (8th Cir. 1968).

Therefore, giving Full Faith and Credit to the State Court Judgment -- as we must as a matter of Federal law, see Hannig v. City of Winner, S.D., 527 F.3d 674, 676 (8th Cir. 2008)("Under the Full Faith and Credit Statute, 28 U.S.C. §1738, federal courts in §1983 actions must give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so."), quoting Allen v. McCurry, 449 U.S. 90, 96 (1980) -- and finding that the Plaintiff's claims against the Defendant are barred by the doctrine of res judicata, we recommend that

the Defendant's Motion to Dismiss be granted, and that the Plaintiff's claims be dismissed in their entirety.

Once again, however, even though we find that the Plaintiff's claims against the Defendant, including his newly-asserted Section 1983 claim, are barred by <u>res judicata</u>, in the further interests of completeness, we proceed to analyze whether the allegations against the Defendant are sufficient to state a viable claim under Section 1983, or under the Federal Patient's Bill of Rights.

3.    <u>The Plaintiff's Federal Claims</u>.  As noted, the Plaintiff did not assert any constitutional claims, during his prior State Court action.  Nonetheless, to the extent that his Federal claims, somehow, would not be precluded by the State Court Judgment, we conclude that the Defendant is entitled to a dismissal of those claims, as a matter of law.[3]

_____

[3]While we acknowledge that <u>pro</u> <u>se</u> pleadings must be liberally construed, see, <u>Davis v. Hall</u>, 992 F.2d 151, 152 (8th Cir. 1993)("Civil rights pleadings are construed liberally," but "they must not be conclusory and must set forth facts which state a claim as a matter of law."), citing <u>Nickens v. White</u>, 536 F.2d 802, 803 (8th Cir. 1976), our careful review of the Plaintiff's Complaint reveals no basis for any claim under the Fourth Amendment.  In addition, we have found no independent basis, in the Plaintiff's Complaint -- even upon an indulgent reading -- for a claim based upon the Fourteenth Amendment.  Instead, it appears that the Plaintiff intended only to apply his Eighth Amendment claim to the Defendant, as a State employee, through the doctrine of incorporation.  Accordingly, we limit our analysis, here, to the Plaintiff's

(continued...)

It is well-established that deliberate indifference to a prisoner's serious medical needs is prohibited by the Eighth Amendment.  See, <u>Estelle v. Gamble</u>, 429 U.S. 97, 104-05 (1976); <u>Albertson v. Norris</u>, 458 F.3d 762, 765 (8th Cir. 2005).  "A prisoner's Eighth Amendment rights are violated if prison officials show 'deliberate indifference' to the prisoner's 'serious medical needs.'"  <u>Olson v. Bloomberg</u>, 339 F.3d 730, 735 (8th Cir. 2003), quoting <u>Estelle v. Gamble</u>, supra at 106.  To prevail on a claim of constitutionally inadequate medical care, an inmate must "demonstrate (1) that [he] suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." <u>Dulaney v. Carnahan</u>, 132 F.3d 1234, 1239 (8th Cir. 1997), citing <u>Coleman v. Rahija</u>, 114 F.3d 778, 784 (8th Cir. 1997); <u>Crow v. Montgomery</u>, 403 F.3d 598, 602 (8th Cir. 2005); <u>Pagels v. Morrison</u>, 335 F.3d 736, 740 (8th Cir. 2003); <u>Tlamka v. Serrell</u>, 244 F.3d 628, 633 (8th Cir. 2001). "As long as this threshold is not crossed, inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment." <u>Dulaney v. Carnahan</u>, supra, citing <u>Long v. Nix</u>, 86 F.3d 761, 765 (8th Cir. 1996).

---

(...continued)
attempt to state a claim under the Eighth Amendment.

"Deliberate indifference may be manifested by prison doctors in responding to the prisoner's needs or by prison officials in intentionally denying or delaying access to medical care or intentionally interfering with prescribed treatment." Meloy v. Bachmeier, 302 F.3d 845, 848 (8th Cir. 2002).  However, "[t]he prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." Jolly v. Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000), quoting Estate of Rosenburg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995), see also, Smith v. Clarke, 458 F.3d 720, 724 (8th Cir. 2006); Roberson v. Bradshaw, 198 F.3d 645, 647 (8th Cir. 1999)("'Mere negligence or medical malpractice, however, are insufficient to rise to a constitutional violation.'"), quoting Dulaney v. Carnahan, supra at 1239; DeGidio v. Pung, 920 F.2d 525, 532 (8th Cir. 1990)("[T]he eighth amendment does not transform medical malpractice into a constitutional claim.").

Our initial inquiry focuses on whether the Plaintiff alleged that he suffers, or suffered, from an objectively serious medical need.  See, Jolly v. Knudson, supra at 1096.  A serious medical need is 'one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" Vaughn v. Greene County, 438 F.3d 845, 851 (8th Cir. 2005), quoting Pool v. Sebastian County, Arkansas, 418

F.3d 934, 944 (8th Cir. 2005), quoting, in turn, Johnson v. Busby, 953 F.2d 349, 351 (8th Cir. 1991); Grayson v. Ross, 454 F.3d 802, 808-09 (8th Cir. 2006).  Here, the Plaintiff alleged that, at the time when the Defendant refused his request for a hospital visit, "his right leg was swelling and was considerably bigger in size, compared to the left leg."  See, Complaint, supra at p. 3; see also, Grayson v. Ross, supra at 809, citing Aswegen v. Henry, 49 F.3d 461, 464 (8th Cir. 1995)("To constitute an objectively serious medical need or deprivation of that need * * * the need or deprivation alleged must either be obvious to the layperson or supported by medical evidence, like a physician's diagnosis."), citing, in turn, Beyerbach v. Sears, 49 F.3d 1324, 1326-1327 (8th Cir. 1995), abrogation on other grounds recognized by Reece v. Groose, 60 F.3d 487, 492 (8th Cir. 1995); Johnson v. Busby, supra at 351.

The Plaintiff asserts that, once he was taken to a hospital, he was diagnosed with MRSA.  Assuming, without deciding, that the Plaintiff has satisfactorily pled the first prong of an Eighth Amendment claim, we turn to consider whether the Plaintiff has alleged that the Defendant exhibited deliberate disregard for his medical needs.  See, Grayson v. Ross, supra at 808-09.

In his Complaint, the Plaintiff alleges that the Defendant was deliberately indifferent to his swollen leg, because she refused to bring him to the hospital when

he first reported to the nurse's station on September 10, 2005. Construing the Complaint generously, we understand his claim to be that the Defendant delayed his access to medical care. See, Estelle v. Gamble, supra at 106 ("[A] pro se complaint, 'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers[.]'"), quoting Haines v. Kerner, 404 U.S. 519, 520-21 (1972); Stringer v. St. James R-1 School Dist., 446 F.3d 799, 802 (8th Cir. 2006).

It is well-settled that "[t]he objective portion of the deliberate indifference standard requires a showing of 'verifying medical evidence' that * * * delays adversely affected [the plaintiff's] prognosis, given the type of injury in [the] case." Dulany v. Carnahan, 132 F.3d 1234, 1243 (8th Cir. 1997), quoting Crowley v. Hedgepeth, 109 F.3d 500, 502 (8th Cir. 1997); see also, Senty-Haugen v. Goodno, 462 F.3d 876, 890 (8th Cir. 2006); Coleman v. Rahija, supra at 785; Beyerbach v. Sears, 49 F.3d 1324, 1326 (8th Cir. 1995); see also, Jolly v. Badgett, 144 F.3d 573, 573 (8th Cir. 1998)(Summary Judgment granted when prisoner failed to show prison officials were aware that delay in administering medications could result in physical harm); Crowley v. Hedgepeth, supra at 501 ("[W]hen the inmate alleges that the delay in treatment is the constitutional deprivation, the objective seriousness of the deprivation should also be measured by reference to the effect of delay in treatment.").

Here, at the pleadings stage, the Plaintiff is not required to prove that his condition was aggravated by the delay in medical treatment -- instead, he need only allege such aggravation. However, despite a careful review of the Complaint, we find no allegation that the Plaintiff's condition was exacerbated, by a six (6) day delay in treatment. Although the Plaintiff alleges that he was diagnosed with MRSA, which he describes as "a highly contagious and fatal staph infection, if not properly and immediately taken care of," Complaint, supra at p. 4, he has not alleged that his leg condition worsened, between September 10, and September 16, 2005, nor has he alleged that he would not have become infected with MRSA, but for the delay in his medical treatment, or that his general health deteriorated as a result of the delay in treatment. See, Moots v. Lombardi, 453 F.3d 1020, 1023 (8th Cir. 2006)("Moots's claim still fails because he has not alleged that he suffered any harm as a result of this temporary delay."), citing Crowley v. Hedgepeth, 109 F.3d 500, 502 (8th Cir. 1997).

In sum, the Plaintiff has not alleged any facts which would satisfy the objective prong of the Farmer inquiry that any deprivation was "objectively, sufficiently serious." Farmer v. Brennan, supra at 834. Therefore, even if the Plaintiff's Section 1983 claim were not barred by the Eleventh Amendment, and res judicata, we find that

the Plaintiff has failed to state a claim for any violation of the Eighth Amendment. Therefore, we recommend that the Plaintiff's constitutional claim be dismissed.

Lastly, with respect to the Plaintiff's asserted claim, under the Federal Patient's Bill of Rights for Mental Health Patients, we agree with the Courts who have considered the issue, and have concluded that Title 42 U.S.C. §§9501 and 10841 do not create a private cause of action, nor any enforceable Federal rights.[4]   See, Monahan v. Dorchester Counseling Center, Inc., 961 F.2d 987, 994-95 (1st Cir. 1992) ("This use of the terms 'should' and 'the sense of Congress' [in the statute] indicate that the statute is merely precatory."); see also, Benge v. Pounds, 2008 WL 384567 at *3 (D. Colo., February 7, 2008)("Nothing in the language of the statute indicates an intent by Congress that the 'Restatement of Bill of Rights for Mental Health Patients' should create a private cause of action."); Carmack v. National R.R. Passenger Corp., 486 F.Supp.2d 58, 87 (D. Mass. 2007); Smith v. Au Sable Valley

---

[4]In pertinent part, Section 10841 provides as follows:

It is **the sense of the Congress** that, as previously stated in title V of the Mental Health Systems Act [42 U.S.C.A. §9501 et seq.], each State **should** review and revise, if necessary, its laws to ensure that mental health patients receive the protection and services they require * * * .

Title 42 U.S.C. §10841 [emphasis added].

Community Mental Health Services, 431 F.Supp.2d 743, 750-51 (E.D. Mich. 2006);

Brooks v. Johnson and Johnson, Inc., 685 F.Supp. 107, 108-09 (E.D. Pa. 1988).

Having concluded that the Plaintiff's Complaint fails to state any Federal claim, we recommend that, if any of the Plaintiff's State law claims were to survive the application of the Eleventh Amendment, or res judicata, then the District Court should decline to extend supplemental jurisdiction over those claims.  Our Court of Appeals recently explained, in Gilson v. Weber, 433 F.3d 642, 647 (8th Cir. 2006):

> Under 28 U.S.C. §1367(c)(3), a court may "decline to exercise supplemental jurisdiction over a claim * * * [if] the district court has dismissed all claims over which it has original jurisdiction."   Congress unambiguously gave district courts discretion in 28 U.S.C. §1367(c) to dismiss supplemental state law claims when all federal claims have been dismissed, and there is no basis to find an abuse of discretion here.  See Labickas v. Arkansas State University, 78 F.3d 333, 334 (8th Cir. 1996); McLaurin v. Prater, CO-1, 30 F.3d 982, 985 (8th Cir. 1994).

"[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine -- judicial economy, convenience, fairness, and comity -- will point toward declining to exercise jurisdiction over the remaining state-law claims."   Barstad v. Murray County, 420

F.3d 880, 888 (8th Cir. 2005), quoting <u>Carnegie-Mellon Univ. v. Cohill</u>, 484 U.S. 343, 350 n. 7 (1988).

Here, we have recommended that the Plaintiff's purported Federal claims be dismissed, on several grounds.  As a consequence, we further recommend that the District Court decline to exercise supplemental jurisdiction over the Plaintiff's purely State law claims.

NOW, THEREFORE, It is --

RECOMMENDED:

That the Motion of the Defendant to Dismiss the Complaint [Docket No. 7] be granted.

Dated:  August 11, 2008                      s/Raymond L. Erickson
                                             Raymond L. Erickson
                                             CHIEF U.S. MAGISTRATE JUDGE

NOTICE

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than**

**August 28, 2008,** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

     If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than August 28, 2008,** unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.